```
                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF INDIANA
                         HAMMOND DIVISION


GOLEMINE, INC., dba The Rink,  )
ANTWAN THORBS,                 )
                               )
          Plaintiffs           )
                               )
     v.                        )    Case No. 2:08 cv 145
                               )
TOWN OF MERRILLVILLE, INDIANA, )
                               )
          Defendant            )
```

## OPINION AND ORDER

This matter is before the court on the Motion to Dismiss Plaintiffs' Complaint for Lack of Subject Matter Jurisdiction [DE 19] filed by the defendant, Town of Merrillville, Indiana, on January 6, 2009, and the Motion to Strike [DE 22] filed by the plaintiffs, Golemine, Inc. and Antwan Thorbs, on January 24, 2009. For the reasons set forth below, the motion to dismiss is **DENIED,** and the motion to strike is **DENIED.**

### Background

Golemine, Inc., operated a successful skating rink in Merrillville, Indiana, called The Rink. It originally was owned and operated by Don Reiner. Golemine entered a contract to purchase The Rink and utilized its profits to pay the contract purchase price. Reiner, and later Golemine, operated The Rink under a valid business license from Merrillville. Antwan Thorbs, an African American, was a principal of Golemine and operated The Rink.

In October 2007, Commander Lance Huish of the Merrillville

Police Department sent a letter to Merrillville Town officials reporting an increase in frequency and severity of problems at The Rink and its surrounding area. Issues arising from the site which concerned Huish included repeated noise complaints, fights, loitering, batteries, and an assault on a police office by a Rink security guard. Huish wrote a second letter on February 20, 2008, describing further problems at The Rink and recommending the revocation of The Rink's business license.

Golemine and Thorbs claim that Merrillville and its police department harassed and threatened them with the issuance of nuisance citations designed to affect The Rink's ability to maintain a customer base and earn a profit. In addition, on January 26, 2008, Thorbs was arrested by a Merrillville police officer issuing him a citation for a public nuisance violation. This arrest is documented in one of Huish's letters as well as in the Complaint, which states that "Thorbs was arrested and charged with resisting arrest for questioning the Merrillville Officer and for not showing the Officer his identification quick [sic] enough." (Pltf. Compl. ¶ 17)

On March 7, 2008, Tim Brown, then Merrillville Town Manager, held and recorded a meeting with Reiner, his attorney, and Thorbs concerning the problems with The Rink. (DE 19-5, Deft. Ex. B-1) At the meeting, the attendees discussed the previous incidents with the Merrillville Police Department and the negative effects on Merrillville's resources and the surrounding community. At the close of the meeting, Brown stated that he would suspend

Golemine's business license for a 60-day period, but after an objection by Golemine's counsel, he decided to revoke Golemine's license for The Rink for 60 days as specifically prescribed by the Ordinance.  Brown indicated that he would schedule a meeting with the Town Council, which can hear appeals from Brown's decisions, within the 60 day period.  (DE 19-5 pp. 13, 17; Deft. Ex. B-1)  Brown revoked The Rink's business license pursuant to Merrillville Ordinances 9-62 and 9-63, which allow for suspension or revocation of any license following violations of ordinances and other laws, rules, or regulations.

On March 10, 2008, Golemine and Thorbs' counsel sent a facsimile to counsel for Merrillville indicating that they intended to request a temporary restraining order (TRO) the following day to bar the license revocation.  On March 11, 2008, after a discussion with counsel for the Town and Brown, Golemine and Thorbs agreed to delay filing the lawsuit in exchange for either lifting the revocation or scheduling an expedited public hearing before the Town Council.  Golemine and Thorbs also requested that they be permitted to open their business on March 14, 2008.

The parties do not appear to have made any additional contact between March 12 and May 5, 2008.  The Rink remained closed.  On May 5, Golemine and Thorbs filed a Complaint in federal court claiming violations of their civil rights.  Specifically, Golemine sought compensation for a violation of its civil rights to engage "in commerce and its ability to make, enforce and perform contracts," and Thorbs claimed violations of his

"fundamental rights in order to shut his business down."  (Comp. ¶¶ 10, 18)  Merrillville filed its timely answer on June 13, 2008, which included a denial of subject matter jurisdiction. (Deft. Ans. ¶ 2)  On January 6, 2009, Merrillville filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1) claiming that the court lacked subject matter jurisdiction over the case because the claims are not ripe due to the plaintiffs' failure to seek a final determination from the Town Council. Golemine and Thorbs filed a Rule 12(f) Motion to Strike the Motion to Dismiss based on the contention that a Rule 12(b)(1) motion must be filed prior to the filing of a responsive pleading.

## Discussion

In regards to plaintiffs' Motion to Strike the Town's Motion to Dismiss, Rule 12(f) provides:

> The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:  (1) on its own; or (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 20 days after being served with the pleading.

The Seventh Circuit disfavors motions to strike because they can be used as a means of causing delay in the judicial process. ***Sayad v. Dura Pharmaceuticals, Inc.***, 200 F.R.D. 419, 421 (N.D. Ill. 2001) (*citing **Heller Financial, Inc. v. Midwhey Powder Co.***, 883 F.2d 1286, 1294 (7th Cir. 1989)).  However, where motions to strike seek to "remove unnecessary clutter from the case, they serve to expedite, not delay." ***Heller Financial, Inc.,*** 883 F.2d

4

at 1294.

The Federal Rules of Civil Procedure govern a motion to dismiss for lack of subject matter jurisdiction, including the required timing of such motions. Rule 12(b) provides:

> Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: (1) lack of subject-matter jurisdiction. . . . A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed.

Rule 12(b) expands on Rule 12(b)(1) by stating: "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Rule 12, read in its entirety, indicates that subject matter jurisdiction is different from other defenses. Indeed, subject matter jurisdiction cannot be forfeited or waived by a party. ***Arbaugh v. Y&H Corp.***, 546 U.S. 500, 514, 126 S.Ct. 1235, 1244, 163 L.Ed.2d 1097 (2006) (*quoting* ***United States v. Cotton***, 535 U.S. 625, 630, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002)). Additionally, the court is required to dismiss the action if it finds it lacks subject matter jurisdiction, even in the absence of a motion by a party. ***Arbaugh***, 546 U.S. at 514, 126 S.Ct. at 1244.

Golemine and Thorbs argue that the 2007 Amendments to the Federal Rules of Civil Procedure made it mandatory for a defendant to file a motion to dismiss for lack of subject matter jurisdiction prior to filing its responsive pleading. However, this argument is negated by the Advisory Committee's Notes to the 2007 Amendments, which state that "[t]he language of Rule 12 has

5

been amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules. *These changes are intended to be stylistic only*." Rule 12 Advisory Committee's Note (emphasis added). The restyling of the rules was not intended to change the process for raising issues of subject matter jurisdiction. Indeed, this circuit has continued to allow subject matter jurisdiction to be raised at any time in the litigation. *See, e.g.,* ***Craig v. Ontario Corp.***, 543 F.3d 872, 875 (7th Cir. 2008) ("[S]ubject-matter jurisdiction is so central to the district court's power to issue any orders whatsoever that it may be inquired into at any time, with or without a motion, by any party or by the court itself."). Because the 2007 stylistic changes to Rule 12 did nothing to change the well-settled law on subject matter jurisdiction, the Motion to Strike is **DENIED.**

As to Merrillville's Motion to Dismiss on a lack of subject matter jurisdiction, the party asserting federal jurisdiction has the burden of establishing its existence by competent proof. ***Krizan v. Apfel***, 35 F.Supp.2d 672, 676 (N.D. Ind. 1999). A federal court must presume that it lacks jurisdiction unless the record affirmatively indicates that it in fact has jurisdiction. ***Sprint Spectrum L.P. v. City of Carmel Indiana***, 361 F.3d 998, 1001 (7th Cir. 2004) (*quoting* ***Renne v. Geary***, 501 U.S. 312, 316, 111 S.Ct. 2331, 2336, 115 L.Ed.2d 288 (1991)). In determining the existence of subject matter jurisdiction, the court may look to evidence outside of the pleadings. ***Krizan***, 35 F.Supp.2d at

6

676. In reviewing the complaint, the court takes plaintiff's well-pleaded facts as true and draws reasonable inferences in plaintiff's favor. *Sprint Spectrum*, 361 F.3d at 1001.

Golemine and Thorbs' Complaint states that their claims are brought under three civil rights statutes: 42 U.S.C. §1981, 42 U.S.C. §1982, and 42 U.S.C. §1983. Ordinarily, the court would be vested with subject matter jurisdiction under these statutes by 28 U.S.C. §1331, which provides federal question jurisdiction, and 28 U.S.C. §1343, which provides jurisdiction for claims arising under the Civil Rights Acts. However, in this case, Merrillville claims that this court lacks subject matter jurisdiction over the claims because they are not ripe for judicial review.

The doctrine of ripeness, like other Article III doctrines, is "an idea . . . about the constitutional and prudential limits to the powers of an unelected, unrepresentative judiciary." *Allen v. Wright*, 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984) (*quoting Vander Jagt v. O'Neill*, 699 F.2d 1166, 1178-79 (D.C. Cir. 1983) (Bork, J., concurring)). As such, ripeness is a fundamental limit on the power of federal courts. *Allen*, 468 U.S. at 750, 104 S.Ct. at 3324. Ripeness is a concern when a case is based upon future events that may not even occur. *Anders ex rel Anders v. Fort Wayne Community Schools*, 124 F.Supp.2d 618, 630 (N.D. Ind. 2000) (*citing Pacific Gas & Electric Co. v. State Energy Resources Conservation & Dev. Com'n*, 461 U.S. 190, 200-01, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983)). *See*

7

also ***Wisconsin Cent., Ltd. v. Shannon***, 539 F.3d 751, 759 (7th Cir. 2008) ("Ripeness is predicated on the 'central perception . . . that courts should not render decisions absent a genuine need to resolve a real dispute.'") (citations omitted). Ripeness is a question of timing. ***Meridian Sec. Ins. Co. v. Sadowski***, 441 F.3d 536, 538 (7th Cir. 2006); ***Anders ex rel Anders***, 124 F.Supp.2d at 630. When a claim is not ripe, a court lacks subject matter jurisdiction. ***Flying J v. City of New Haven***, 549 F.3d 538, 544 (7th Cir. 2008); ***Biddison v. City of Chicago***, 921 F.2d 724, 726 (7th Cir. 1991).

Ripeness may be an issue in almost any type of constitutional claim. ***TJ's South, Inc. v. Town of Lowell***, 895 F.Supp. 1116, 1121 (N.D. Ind. 1995). In evaluating whether a claim is ripe, the court must look to "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." ***National Park Hospitality Ass'n v. Department of Interior***, 538 U.S. 803, 808, 123 S.Ct. 2026, 2030, 155 L.Ed.2d 1017 (2003)(*citing* ***Abbott Laboratories v. Gardner***, 387 U.S. 136, 149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)). In land use cases, the Supreme Court has indicated that a plaintiff's claim is not ripe until after relevant authorities have made a final determination on how a regulation will be applied to plaintiff's land. ***Williamson County Regional Planning Commission v. Hamilton Bank***, 473 U.S. 172, 191, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985) (finding takings and due process claims not ripe because plaintiff failed to seek a variance before filing suit).

8

However, the Seventh Circuit recognizes exceptions to this rule for "*bona fide* equal protection claims," where the claims involve a fundamental right or suspect class. *Forseth v. Village of Sussex*, 199 F.3d 363, 370 (7th Cir. 2000). Equal protection claims based on "the malicious conduct of a governmental agent, in other words, conduct that evidences a 'spiteful effort to 'get' him for reasons wholly unrelated to any legitimate state objective,'" are excepted from *Williamson County*'s requirements. *Forseth*, 199 F.3d at 371 (excusing the failure to wait for a final determination when the village board president conditioned a development plan on his own pecuniary gain).

In support of its position that this case is not ripe for judicial review, Merrillville cites to *Sprint Spectrum* in which Sprint sought to place an antenna on a residential property pursuant to a permit, which a neighbor objected to. The local building commissioner issued a stop work order and the City of Carmel's Board of Zoning Appeals sided with the neighbor in the subsequent appeal and informed Sprint that it must seek a variance. Sprint filed suit in federal court. The Seventh Circuit, applying the *Williamson County* prudential requirements, found that it was mere speculation that Sprint sustained an injury until it was told definitively whether it would be permitted to install its antenna. *Sprint Spectrum,* 361 F.3d at 1004.

Additionally, Merrillville cites to *Biddison* for the proposition that a final decision is required before the filing of a suit for wrongful deprivation of property. In *Biddison,* a land-

9

owner filed suit in federal court, claiming that noise from airplane traffic around the local airport violated his constitutional rights. However, the landowner did not avail himself of an inverse condemnation statute at the state level before filing suit. The Seventh Circuit, applying the ripeness requirements of ***Williamson County***, held that the landowner's claims were not ripe for judicial review because he failed to seek "just compensation" from the State before pursuing his federal remedies. ***Biddison***, 921 F.3d at 728.

Recently, the Seventh Circuit discussed ***Williamson County***'s requirements in ***Flying J***. In that case, the City of New Haven amended its zoning ordinances effectively to cut off Flying J's plans after a court granted summary judgment in Flying J's favor that its proposed land use did not violate its zoning designation. After Flying J filed suit in federal court, the City of New Haven argued that Flying J was asserting a takings claim and was required to await a final decision and the denial of just compensation under the Supreme Court's holding in ***Williamson County***. The Seventh Circuit held that Flying J's complaint alleged the sort of ill-will that made the ripeness requirements of ***Williamson County*** inapplicable. ***Flying J***, 549 F.3d at 544-45.

In analogizing to ***Sprint Spectrum*** and ***Biddison,*** Merrillville argues that Golemine and Thorbs were required to await a final determination from the Town Council and that the failure to do so makes this case unripe for judicial determination. There is no indication in either the pleadings or additional evidence that

10

Golemine and Thorbs formally appealed the revocation or appeared before the Town Council to seek removal of the revocation status on their business license.  Thus, in order for Golemine and Thorbs to prevail on this motion to dismiss, their claims must not require a final determination by the Town Council.

In revoking Golemine's business license, Town Manager Brown relied on ordinance 9-62, which reads in relevant part:

> Any license required by town ordinances may be suspended or revoked by the town council for any one or more of the following reasons: (1) Violation by the licensee of an ordinance of the town; (2) Violation by the licensee of any law, rule or regulation of the state or of the United States, or any department or division thereof; . . . Following three (3) official negative citations/incidents to the Merrillville Police Department, the town manager may elect for an immediate investigation into the activities of the business. Following this investigation, *the town manager may revoke the business license in accordance with the established procedures*. (emphasis added)
>
> MERRILLVILLE, IND. ORDINANCE ch. 9, §62 (2008), *available at* http://www.municode.com/resources/gateway.asp?pid=11247&sid=14

The procedures for revocation and suspension are laid out in ordinance 9-63, which reads in relevant part:

> (b) The town manager may suspend or revoke any license for one (1) or more of the reasons set forth in section 9-62. . . . (e) Any licensee whose license has been revoked shall have the right to reapply for a license upon application and payment of all fees.  (f) The town manager may deny a license to any applicant who has had a license issued by the town revoked.  (g) In the event that a business license is suspended or revoked by the town manager, the business has the right to appeal to the town council within five (5) working

11

>        days of the time of appeal.
>
>     *Id.* at ch. 9, §63

It is clear that Brown had the authority to revoke Golemine's business license under 9-62 after three reported incidents and an investigation. Likewise, he could suspend or revoke Golemine's business license under 9-63(b). The revocation was appealable within five working days under 9-63(g). Brown revoked the license for 60 days and informed Golemine and Thorbs that he would arrange for a hearing before the Town Council.

Merrillville's arguments for finality based on **Sprint Spectrum** and **Biddison** are compelling, but interpreting the facts of the Complaint in the view most favorable to the plaintiffs, it appears that Golemine and Thorbs allege that Merrillville harassed, threatened, and manufactured evidence against them in an effort to damage their business. Although the Complaint's alleged violations of civil rights laws are difficult to understand as written, they seem most likely to resemble malicious acts under **Forseth** and demonstrated in **Flying J**, bringing the claim outside of the ripeness requirements of **Williamson County**. Brown revoked Golemine's license for a 60 day period in anticipation of a hearing or meeting before the Town Council in that same period. This hearing never occurred, and Golemine and Thorbs waited until the 60th day of the revocation before filing their Complaint, without formally appealing the revocation and without a hearing before the Town Council. As predicted, Golemine failed to make the required payments and lost The Rink as a business.

While Merrillville argues that a decision to reinstate the license would moot the issue, reinstating the license would not alter the fact that Golemine lost its investment in The Rink due to the alleged misconduct of Merrillville. Reinstatement of the license by the Town Council cannot undo this alleged injury. Therefore, the court finds that this case is fit for judicial review since a concrete, complete injury already has occurred and the allegations are that the conduct was malicious. As such, the Motion to Dismiss is **DENIED**.

All of this discussion about whether ripeness is appropriately the issue at hand highlights the more prominent problem with this cause of action, namely, that the plaintiffs' Complaint is incomprehensible. It is no surprise that defendant's counsel has wasted time and effort in researching and composing briefs related to ripeness, only to be informed by the plaintiffs in their response that "[p]laintiffs are not alleging a taking of their property" pursuant to the Fifth Amendment. This statement raises the obvious question: What exactly are the plaintiffs alleging?

The "Jurisdiction & Preliminary Statement" of the Complaint states that the "[p]laintiff, Golemine, Inc., d/b/a [sic] is seeking compensatory damages, cost [sic] and attorney fees pursuant to 42 U.S.C. §1981, 42 U.S.C. §1982 and 42 U.S.C. §1988 for the Defendant's acts or omissions committed under color of law which deprived Plaintiff of fundamental rights and the ability to make, perform, modify and enforce contracts." Al-

13

though the complaint includes federal civil rights statutes in an effort to invoke federal court jurisdiction, this sentence lacks any legal basis for jurisdiction for a corporation.  Although the phrase "under color of law" is used in this paragraph, the corresponding federal statute, §1983, is not.  It also is unclear how the defendant governmental entity, the Town of Merrillville, which had no contractual relationship with Golemine, can be held liable for a §1981 claim.  Likewise, in light of Golemine's arguments denying the existence of a due process takings claim, a §1982 discrimination claim with regard to ownership or use of real and personal property is perplexing.  The Complaint lacks factual assertions minimally necessary to support or even comprehend these statutory claims.  Moreover, §1988 only is applicable for the award of attorney fees to the prevailing party under one of the other two statutes and is therefore dependant on one of those claims succeeding.

The next sentence does little to clarify matters, asserting that "[p]laintiff, Antwan Thorbs seeks compensatory damages, cost [sic] and attorney fees against the Defendant for the deprivation of his fundamental rights under the First and Fourth Amendments to the United States Constitution pursuant to 42 U.S.C. §1982 and 42 U.S.C. §1983."  Here, Thorbs is a citizen who is entitled to relief under the two statutes cited, but the vague reference to a "deprivation of his fundamental rights" is left undefined

throughout the remainder of the Complaint.[1]  Likewise, everyone is left to guess about how the First and Fourth Amendment rights are allegedly infringed, so much so that both the defendant and the court felt compelled to investigate the issue of ripeness as though a Fifth Amendment takings claim with a deprivation of Due Process was intended by the plaintiffs.

In listing the parties to the civil action, the Complaint declares that "Antwan Thorbs, an African American, is a Principal of Golemine, Inc. and a Resident of Gary, Lake County, Indiana."  This mention of Thorbs' race is the sole reference to race in the Complaint, and the Complaint does not contain the word "discrimination" in any form.  Based upon these sketchy facts, it cannot be determined whether Thorbs is alleging that the license was revoked because of his race.

The Complaint alleges two counts of wrongdoing.  In Count I, Golemine, Inc. alleges that the Town "began a series of harassing and threatening contacts" in a scheme "to adversely effect [sic] the Rink's reputation, operation and success."  Recounting the Town's manufacture of evidence, refusal to use reasonable measures to keep the business operating after the license suspension, and inability to follow its own Ordinances, Count I prays that the Corporation receive $7,500,000 in compensatory damages for the violation of its civil rights.

---

[1] "As enunciated by the Supreme Court, fundamental rights include voting, interstate travel, and various aspects of privacy (such as marriage and contraception rights)."  *Black's Law Dictionary* 697 (8th ed. 2004).  None of these rights appear to be implicated in this cause of action.

Count II includes Golemine and Thorbs and asserts general harassment of Thorbs and that Thorbs "has been personally cited for alleged nuisance violations stemming from Golemine's operation of the Rink[,] . . . several of the Citations were thrown out of Court; one Citation was forged by someone after its issuance to Thorbs and before it was submitted to the prosecutor[,] . . . and Thorbs was arrested by the Merrillville Police . . . [for] resisting arrest for questioning the Merrillville Officer and for not showing the Officer his identification quick enough."[2] Count II concludes by stating that "the Town of Merrillville intended to violate Plaintiff, Thorbs' fundamental rights in order to shut his business down[,]" again with elaboration on which of the recognized fundamental rights have been violated. Thorbs prays for $3,000,000 in compensatory damages for the allegations of Count II.

The response brief attempts to explain the nature of claims put forth. However, more clarification is necessary before these issues can be addressed in a dispositive motion. The pleading should be self-explanatory. Federal Rule of Civil Procedure 8(a) requires that a claim for relief must contain:

> (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;

---

[2]Although the Complaint reports Thorbs' arrest as a fact, no explanation of how Thorbs' arrest is implicated in any claim is included in the Complaint. Likewise, the Complaint fails to mention at any point the validity or invalidity of the arrest.

16

> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> (3) a demand for the relief sought, . . .

"Under Rule 8, a complaint 'must be presented with intelligibility sufficient for a court or opposing party to understand whether a valid claim is alleged and if so what it is,'" *Vicom v. Harbridge Merchant Serv., Inc.*, 20 F.3d 771, 775 (7th Cir. 1994) (citations omitted), and "with clarity sufficient to avoid requiring a district court or opposing party to forever sift through its pages in search" of the plaintiff's claims. *Jennings v. Emry*, 910 F.2d 1434, 1436 (7th Cir. 1990). The Supreme Court very recently visited the requirements of Rule 8(a)(2) in *Ashcroft v. Iqbal, et al.*, ___ U.S. ___, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), explaining that the rule "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Rather, pleaders are instructed:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . .
>
> Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . .
>
> While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.
>
> *Ashcroft*, ___ U.S. ___, 129 S.Ct. at 1949-50

***Ashcroft*** involved allegations that the FBI and the United States Attorney General arrested and detained thousands of Arab Muslim men solely on account of discriminatory factors as a matter of policy in the wake of the September 11, 2001, terrorist attacks. The Supreme Court reviewed a motion to dismiss for failure to plead sufficient facts to state a claim for purposeful and unlawful discrimination by a Muslim Pakistani held in confinement. The Supreme Court found that the complaint failed to put forth contentions that were more than "bare assertions," amounting to "nothing more than a formulaic recitation of the elements of a constitutional discrimination claim, namely, that [the government] adopted a policy 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." ***Ashcroft***, ___ U.S. ___, 129 S.Ct. at 1951. "As such, the allegations are conclusory and not entitled to be assumed true." "It is the conclusory nature of [the plaintiff's] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth." ***Ashcroft***, ___ U.S. ___, 129 S.Ct. at 1951.

Here, the Complaint filed by Golemine and Thorbs falls far short of the requirements of Rule 8(a). The Complaint not only lacks the facts necessary to infer even the mere possibility of misconduct, but it also lacks any attempt to spell out the elements necessary to support claims under the statutes mentioned. The defendant, like the court, cannot be expected to guess at the plaintiffs' claims. The sprinkling of buzzwords are

18

insufficient and fail to identify the exact claims the plaintiffs are trying to pursue. What is completely absent from the Complaint is far more troubling: facts. The Complaint is devoid of *any* facts concerning actual discrimination, *any* reference to a basis for discrimination, and *any* facts which lay out the elements of a discernable legal claim under 42 U.S.C. §1983.

In an effort to clarify the issues before the court, the court **ORDERS** the plaintiffs to file an amended complaint within twenty (20) days of the entry of this order so that the defendant and the court can be fully informed as to precisely what claims the plaintiffs are asserting, and the defendant shall have an opportunity to respond to a clear, understandable complaint. *See Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2nd Cir. 1988) (explaining that court may dismiss a complaint sua sponte, but dismissal is "usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.").

_____

For the foregoing reasons, the Motion to Dismiss Plaintiffs' Complaint for Lack of Subject Matter Jurisdiction [DE 19] filed by the defendant, Town of Merrillville, on January 6, 2009, is **DENIED,** and the Motion to Strike [DE 22] filed by the plaintiffs, Golemine, Inc. and Antwan Thorbs, on January 24, 2009, is **DENIED.** The plaintiffs are **ORDERED** to file an amended complaint within twenty (20) days of entry of this order.

ENTERED this 13th day of July, 2009

                                    s/ ANDREW P. RODOVICH
                                       United States Magistrate Judge