UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

GOLEMINE, INC., dba The Rink,   )
ANTWAN THORBS,                  )
                                )
            Plaintiffs          )
                                )
        v.                      )   Case No. 2:08 cv 145
                                )
TOWN OF MERRILLVILLE, INDIANA,  )
                                )
            Defendant           )

OPINION AND ORDER

This matter is before the court on the Motion for Summary
Judgment [DE 34] filed by the defendant, Town of Merrillville,
Indiana, on September 13, 2010.  For the following reasons, the
motion is GRANTED.

Background

Golemine, Inc., operated a successful skating rink in
Merrillville, Indiana, called The Rink.  It originally was owned
and operated by Don Reiner.  Golemine entered a contract to
purchase The Rink and to utilize its profits to pay the contract
price.  Reiner, and later Golemine, operated The Rink under a
valid business license from Merrillville. Antwan Thorbs, an
African American, was a principal of Golemine and managed The
Rink.

In October 2007, Commander Lance Huish of the Merrillville
Police Department sent a letter to Merrillville Town officials

reporting an increase in the frequency and severity of the
problems at The Rink and its surrounding area.  Issues arising
from the site which concerned Huish included repeated noise
complaints, fights, loitering, batteries, and an assault on a
police officer by a Rink security guard.  On November 19, 2007,
Tim Brown, then Merrillville Town Manager, held and recorded a
meeting with Reiner, Thorbs, and counsel for both parties con-
cerning the matters raised in Huish's October letter.  The
situation at The Rink did not improve after the meeting.

On January 26, 2008, Thorbs was at the nearby Speedway to
monitor his patrons.  A Merrillville police officer issued Thorbs
a citation for a public nuisance violation for the behavior of
his patrons and arrested him for failure to comply when Thorbs
refused to present his identification.  In light of the continu-
ing problems, Huish wrote a second letter to Brown on February
20, 2008, describing the further problems at The Rink and recom-
mending the revocation of The Rink's business license.

Brown held a second meeting on March 7, 2008.  At the
meeting, the attendees discussed the previous incidents with the
Merrillville Police Department and the negative effects on
Merrillville's resources and the surrounding community. At the
close of the meeting, Brown stated that he would suspend Gole-
mine's business license for a 60-day period, but after an objec-

tion by Golemine's counsel, he decided to revoke Golemine's license for The Rink for 60 days as specifically prescribed by the Ordinance. Brown indicated that he would schedule a meeting with the Town Council, which can hear appeals from Brown's decisions, within the 60 day period. (Mot. to Dismiss Exh. 5 pp. 13, 17; Resp. to Mot. to Dism. Exh. B-1) Brown revoked The Rink's business license pursuant to Merrillville Ordinances 9-62 and 9-63, which allow for suspension or revocation of any license following violations of ordinances and other laws, rules, or regulations.

On March 10, 2008, Golemine and Thorbs' counsel sent a facsimile to counsel for Merrillville indicating that they intended to request a temporary restraining order (TRO) the following day to bar the license revocation. On March 11, 2008, after a discussion with counsel for the Town and Brown, Golemine and Thorbs agreed to delay filing the lawsuit in exchange for either lifting the revocation or scheduling an expedited public hearing before the Town Council. Golemine and Thorbs also requested that they be permitted to open their business on March 14, 2008.

The parties had ongoing communications to try to resolve their dispute. The plaintiffs' counsel, Darnail Lyles, agreed to obtain and provide Merrillville with a security contract proposal from an area police department. However, the contract never was

produced.  Before the expiration of the 60 days, on May 5, 2008, Golemine and Thorbs filed a complaint in federal court claiming violations of their civil rights. Golemine and Thorbs claim that Merrillville and its police department harassed and threatened them with the issuance of nuisance citations designed to affect The Rink's ability to maintain a customer base and earn a profit.

Merrillville filed its timely answer on June 13, 2008, which included a denial of subject matter jurisdiction.  On January 6, 2009, Merrillville filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1) claiming that the court lacked subject matter jurisdiction over the case because the claims were not ripe due to the plaintiffs' failure to seek a final determination from the Town Council.  Golemine informed the court that it was not alleging a deprivation of property, rather, it was claiming that Merrillville violated its right to Due Process when it suspended Golemine's business license.  Relying on this, the court denied Merrillville's motion to dismiss and instructed the plaintiffs to file an amended complaint to clarify the issues.

Golemine filed an amended complaint on August 3, 2009. Count I of Golemine's amended complaint explains several events that occurred at The Rink that are the basis of its complaint. In particular, Golemine alleges that Merrillville harassed and threatened The Rink and its patrons from February 2007 through

March 2008.  The police routinely blocked the driveway, shined their car lights into the parking lot, hassled patrons in the parking lot, and generated false reports of criminal activity. The police also issued Thorbs several nuisance citations that ultimately were dismissed because the Merrillville Town Ordinance was not followed.  After Thorbs was arrested and taken to jail for a nuisance violation and resisting arrest for failing to produce his identification, he was acquitted on the charges.

Based on these facts, the plaintiffs argue that Merrillville applied its nuisance laws in a racially discriminatory manner because non-minority owned businesses that the police frequented did not have their licenses revoked and their owners were not personally cited for the events that occurred on their property. The plaintiffs also allege that the Town did not follow its Ordinance or Indiana law in suspending The Rink's business license.  Count I concludes by stating that "Due to the above stated events Plaintiff, Golemine, Inc. lost its lucrative business, property, real estate, the value of its investments, future income, its reputation and its good will.  With regard to Golemine's real estate the Town's actions amounts to a taking without due process of law or just compensation." Count II incorporates the above referenced incidents and pleads that Thorbs' rights to free speech and to be free from unreasonable

searches and seizures were violated during the course of his arrest.  Merrillville now moves for summary judgment on both counts.

## Discussion

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated that "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Stephens v. Erickson, 569 F.3d 779, 786 (7th Cir. 2009). The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. Adickes v. S.H. Kress & Company, 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142, 155 (1970); Stephens, 569 F.3d at 786.  A fact is material if it is outcome determinative under applicable law.  There must be evidence on which the jury could reasonably find for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986); Stephens, 569 F.3d at 786; Wheeler v. Lawson, 539 F.3d 629, 634 (7th Cir. 2008).

Summary judgment is inappropriate for determination of claims in which issues of intent, good faith, and other subjec-

tive feelings play dominant roles.  Ashman v. Barrows, 438 F.3d 781, 784 (7th Cir. 2006).  Upon review, the court does not evaluate the weight of the evidence, judge the credibility of witnesses, or determine the ultimate truth of the matter; rather, the court will determine whether there exists a genuine issue of triable fact.  Wheeler, 539 F.3d at 634 (citing Anderson, 477 U.S. at 248, 106 S.Ct. at 2510).

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.
>
> [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.
>
> Anderson, 477 U.S. at 250, 106 S.Ct. at 2511

See also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 149-151, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105, 120-122 (2000) (setting out the standard for a directed verdict); Celotex Corp., 477 U.S. at 322-23, 106 S.Ct. at 2553; Stephens, 569 F.3d at 786;

7

Argyropoulos v. City of Alton, 539 F.3d 724, 732 (7th Cir. 2008) (stating that a genuine issue is one on which a reasonable fact finder could find for the nonmoving party); Springer v. Durflinger, 518 F.3d 479, 483 (7th Cir. 2008)(stating that a genuine issue exists and summary judgment is inappropriate if there is sufficient evidence for a jury to return a verdict for the nonmoving party).

Golemine alleges claims against the Town of Merrillville under 42 U.S.C. §1982 for interference with its property rights and under 42 U.S.C. §1983 for taking its property without due process of law. Thorbs also alleges violations of 42 U.S.C. §1983 for unlawful search and seizure under the Fourth Amendment and violations of his First Amendment free speech rights. Merrillville moved for summary judgment on all of these issues. In its response brief, Golemine also has asserted equal protection violations. Thorbs has claimed that he was discriminated against because he was a teen club owner, but he has failed to respond to Merrillville's argument for summary judgment on his §1982 claims. Additionally, Thorbs did not address his First and Fourth Amendment claims under §1983.

Because Golemine and Thorbs have provided no argument for the §1982 claim or the First or Fourth Amendment claims brought under §1983, the court considers their argument to be waived.

Pelfresne v. Village of Williams Bay, 917 F.2d 1017, 1023 (7th Cir. 1990)("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point."); Letcher v. Town of Merrill-ville, 2006 WL 2859404, *5 (N.D. Ind. 2006). Summary judgment is therefore GRANTED in favor of Merrillville on these issues.

The Town of Merrillville next argues that Golemine cannot raise new arguments, namely that its equal protection rights were violated and that it was discriminated against because it was a teen club, for the first time in its response brief to a summary judgment motion. Under the notice pleading standard, it is not necessary for parties to specify their legal theories in the complaint. Wudtke v. Davel, 128 F.3d 1057, 1061 (7th Cir. 1997); Veazey v. Communications & Cable of Chicago, Inc., 194 F.3d 850, 854 (7th Cir. 1999)("Under the notice-pleading requirement appli-cable to federal courts, the only function the pleadings must serve is to give notice of the claim; the development of legal theories and the correlation of facts to theory come later in the process."). The complaining party only is required to allege facts that give adequate notice to defendant of the basis for the suit. Wudtke, 128 F.3d at 1062. A plaintiff may substitute one legal theory for another as the claim develops without altering

the complaint, as long as the complaint gives adequate notice of the factual basis for those complaints. Forseth v. Village of Sussex, 199 F.3d 363, 368 (7th Cir. 2000); Ridings v. Riverside Medical Center, 537 F.3d 755, 764 (7th Cir. 2008).

However, the Supreme Court recently visited the requirements of Federal Rule of Civil Procedure 8(a)(2) in Ashcroft v. Iqbal, et al., __U.S.__, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), explaining that the rule "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." The pleading must be made "with clarity sufficient to avoid requiring a district court or opposing party to forever sift through its pages in search" of the plaintiff's claims. Jennings v. Emry, 910 F.2d 1434, 1436 (7th Cir. 1990). Plaintiffs cannot plead vague statements and wait until the last minute to refine the theories on which they built their cases. Evans v. McDonald's Corp., 936 F.2d 1087, 1091 (10th Cir. 1991) (upholding the trial court's refusal to hear the plaintiff's new legal theory that was raised two weeks prior to trial in its response brief to the defendant's motion for summary judgment); Fisher v. Metropolitan Life Insurance Co., 895 F.2d 1073, 1078 (5th Cir. 1990)(refusing to consider an argument the plaintiff raised for the first time in his response brief).

Paragraph 20 of Golemine's amended complaint states that
"The Town did not follow its own Ordinances or Indiana law in
suspending the Rink's business license. Merrillville applied its
nuisance laws to Golemine Corporation in a racially discrimina-
tory manner." The complaint goes on to compare Golemine's
treatment to that of non-minority owners of similarly situated
businesses. Paragraphs 20 and 21 plead that Golemine was treated
differently than other non-minority owned businesses, indicating
Golemine's intent to assert an equal rights claim. Because
Golemine only was required to plead the factual basis of its
claim and not the legal theory, the complaint satisfied the
notice pleading standard and sufficiently put Merrillville on
notice of its intent to raise an equal protection claim by plead-
ing that it was treated differently than other non-minority owned
businesses. See Doe v. Calumet City, 641 N.E.2d 498, 509 (Ill.
1994) (overruled on other grounds) (finding that allegation that
an officer violated a woman's right to equal protection by treat-
ing her complaint differently than if it were made by a male
satisfied the pleading standard); Didzerekis v. Stewart, 41
F.Supp.2d 840, 847-48 (N.D. Ill. 1999) (finding a complaint that
stated that: "The City of Naperville and the defendant police
officers acted in willful and wanton disregard for Marsha Brewer-
Stewart's safety and violated her civil rights guaranteed under

the fourteenth amendment to the United States Constitution" satisfied the pleading standards for alleging a due process and equal protection claim). Therefore, Merrillville has been on notice of Golemine's equal protection claim since Golemine filed its amended complaint, and the court finds that it was raised in a timely manner.

On the other hand, the facts pled in the complaint do not indicate that Thorbs was treated differently because he was a teen club owner. The only reference the complaint makes to The Rink being a teen club is that "Thorbs is an African American male and the majority of the Patrons of the Rink were African American teenagers." Even construing this liberally, this paragraph does not indicate that he was treated differently because he was a teen club owner. Read in conjunction with the other allegations contained in the amended complaint, it is clear that Thorbs, like Golemine, was referring to a racial disparity. It is too late for Thorbs to raise this issue in his response to Merrillville's motion for summary judgment. See Evans, 936 F.2d at 1091 (finding that it was too late to raise a new argument for the first time in the party's response to summary judgment). Therefore, summary judgment is GRANTED in favor of Merrillville on this claim.

Golemine's §1983 claims are all that remain. Section 1983 provides a remedy when a defendant, acting under color of state law, deprives a plaintiff of a right protected by the Constitution or laws of the United States. Ovadal v. City of Madison, WI, 416 F.3d 531, 535 (7th Cir. 2005). When, as here, there is no dispute that the defendants were acting under color of state law, the analysis of a §1983 claim properly begins by identifying "the exact contours of the underlying right said to have been violated." County of Sacramento v. Lewis, 523 U.S. 833, 844 n.5, 118 S.Ct. 1708, 1714 n.5, 140 L.Ed.2d 1043 (1998). "Those specific rights in turn provide the appropriate analytical lens through which facts are to be viewed, directing [courts] to the proper doctrinal framework in which to address claims." Bubblitz v. Cottey, 327 F.3d 485, 488 (7th Cir. 2003) (internal citations and quotations omitted).

The remaining source of rights underlying Golemine's §1983 claims include the Fourteenth Amendment Due Process Clause for deprivation of property without procedural due process and the Equal Protection Clause for race discrimination. The Fourteenth Amendment Due Process Clause provides in part:

> All persons born or naturalized in the United
> States, and subject to the jurisdiction
> thereof, are citizens of the United States
> and the State wherein they reside. No State
> shall make or enforce any law which shall
> abridge the privileges or immunities of citi-

13

zens of the United States; nor shall any
State deprive any person of life, liberty, or
property, without due process of law . . .
(emphasis added)

To establish a deprivation of property without due process of
law, Golemine must show (1) that the offending actions were taken
by someone acting under the color of state law; (2) that the
conduct deprived it of a constitutionally protected property
interest; and (3) the alleged deprivation occurred without due
process of law.  Johnson v. Wilson, 2008 U.S. Dist. LEXIS 9714,
*5 (S.D. Ind. Feb. 8, 2008)(citing Germano v. Winebago County,
403 F.3d 926, 927 (7th Cir. 2005)).

The parties first dispute whether Golemine is judicially
estopped from raising a due process argument for taking its
property.  In response to Merrillville's motion to dismiss,
Golemine argued that the issue before the court was not the
taking of real estate, but the suspension of its business li-
cense.  The court denied the motion and instructed Golemine to
clarify its complaint.  Then, in its amended complaint, Golemine
stated that "With regard to Golemine's real estate the Town's
actions amounts to a taking without due process of law or just
compensation."  (Am. Comp. ¶ 23)

The purpose of the doctrine of judicial estoppel is to
protect the integrity of the judicial process from parties chang-
ing their positions throughout litigation.  New Hampshire v.

14

Maine, 532 U.S. 742, 750, 121 S.Ct. 1808, 152 L.Ed.2d 944 (2001). The court generally considers several factors when determining whether to apply judicial estoppel: (1) whether a party's later position is clearly inconsistent with its earlier position; (2) whether the party prevailed in persuading a court to accept the party's earlier position; and (3) whether the opposing party would be unfairly disadvantaged if the party asserting the inconsistent statement was not estopped. New Hampshire, 532 U.S. at 750-51, 121 S.Ct. at 1808.

Applying these factors to Golemine, its present claim that Merrillville violated its due process rights by depriving it of its property is directly contrary to its earlier denial that its complaint was for the deprivation of real property. Golemine waited until the court ruled on its motion to dismiss and then immediately pled an issue that it denied it was raising in its original complaint. The court relied on Golemine's statement when ruling on the motion to dismiss, and Merrillville relied on Golemine's statement that the case was not about the taking of property when filing its reply and conducting discovery. "The policies underlying the doctrine [of judicial estoppel] include preventing internal inconsistency, precluding litigants from 'playing fast and loose' with the courts, and prohibiting parties from deliberately changing positions according to the exigencies

15

of the moment." United States v. McCaskey, 9 F.3d 368, 378 (5th Cir. 1993); New Hampshire, 532 U.S. at 750, 121 S.Ct. at 1808. Golemine is doing just this by employing a bait and switch tactic, crafting its argument to survive a motion to dismiss and then immediately re-pleading the arguments it earlier denied it was raising. Therefore, judicial estoppel should be applied to prevent Golemine from raising the claim that it previously denied.

Assuming, arguendo, that Golemine is not judicially estopped from raising its due process claim, its claim also fails on the merits. First, Golemine failed to assert that the alleged constitutional violation was caused by an official policy or custom of Merrillville, and not by actions of the individuals responsible for the deprivation. It is well settled that liability may not be imposed against a municipal entity under a theory of respondeat superior. McNabola v. Chicago Transit Authority, 10 F.3d 501, 509 (7th Cir. 1993) (citing Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 166, 113 S.Ct. 1160, 1162, 122 L.Ed.2d 517 (1993)); Wilson v. City of Chicago, 6 F.3d 1233, 1240 (7th Cir. 1993). Rather, a municipal entity is liable

> when execution of a government's policy or
> custom, whether made by its lawmakers or
> those whose edicts or acts may fairly be said
> to represent official policy, inflicts the

> injury that the government as an entity is
> responsible under §1983.
>
> Cornfield by Lewis v. Consolidated High
> School District No. 230, 991 F.2d 1316, 1324
> (7th Cir. 1993)(quoting Monell v. Department
> of Social Services, 436 U.S. 658, 684, 98
> S.Ct. 2018, 2037-38, 56 L.Ed.2d 611 (1978)).

In other words, "a local governmental entity will be responsible
for the unconstitutional acts of its employees only if those
actions were taken pursuant to official policy or custom."  Ever-
sole v. Steele, 59 F.3d 710, 715 (7th Cir. 1995).  See also Sams
v. City of Milwaukee, Wisconsin, 117 F.3d 991, 994 (7th Cir.
1997).

"A plaintiff may demonstrate an official policy through: (1)
an express policy that causes a constitutional deprivation when
enforced; (2) a widespread practice that is so permanent and
well-settled that it constitutes a custom or practice; or (3) an
allegation that the constitutional injury was caused by a person
with final policymaking authority."  Estate of Sims v. County of
Bureau, 506 F.3d 509, 515 (7th Cir. 2007).  Moreover, a plaintiff
cannot claim municipal liability unless he can demonstrate that
the enforcement of the policy was the "moving force" behind the
constitutional violation. Cornfield by Lewis, 991 F.2d at 1324.
See also Oklahoma City v. Tuttle, 471 U.S. 808, 823, 105 S.Ct.
2427, 2436, 85 L.Ed.2d 791 (1985) (plurality opinion) ("At the

very least, there must be an affirmative link between the policy and the particular constitutional violation alleged.").

Golemine does not argue that it was deprived of its property as a result of an express practice or by the actions of a final policymaker.  Rather, Golemine points to specific events that transpired between Merrillville and Thorbs, its agent, in an effort to establish a policy or custom.  Golemine argues that the town manager and police engaged in a series of harassing activities, including Thorbs' arrest and issuing it baseless nuisance tickets.  However, these events do not show that Merrillville had a policy or custom of unconstitutionally depriving minority business owners of their property.  Golemine failed to present any evidence beyond its own alleged deprivation that shows that Merrillville unconstitutionally deprived minority business owners of their property.  The fact that Golemine alone may have been unconstitutionally deprived of its property is insufficient to show that Merrillville had a custom or policy of depriving minority business owners of their property without due process. See Phelan v. Cook County, 463 F.3d 773, 790 (7th Cir. 2006) (stating the conduct must be widespread to constitute a policy); Crosby v. Ward, 843 F.2d 967, 983 (7th Cir. 1988)(stating that there must be more than one instance to establish a custom).

Furthermore, Golemine failed to establish that its constitu-
tional rights were violated.  Although the Due Process Clause
protects an individual's freedom to engage in a business activ-
ity, a state may exercise its police power and require a license
to operate a business.  Great Atlantic & Pacific Tea Co. v.
Grosjean, 301 U.S. 412, 57 S.Ct. 772, 81 L.Ed. 1193 (1937).  The
state also can exercise this power to revoke a license when good
cause is shown.  In doing so, the state must provide adequate
safeguards to assure that the individual's due process rights are
satisfied.  Assuming Golemine was deprived of some property, not
only did Merrillville provide pre-deprivation hearings, Indiana
law also provides an adequate post-deprivation remedy.  "[A]
state tort claims act that provides a method by which a person
can seek reimbursement for the negligent loss or intentional
deprivation of property meets the requirements of the due process
clause by providing due process of law."  Johnson, 2008 U.S.
Dist. LEXIS 9714, *6 (citing Hudson v. Palmer, 468 U.S. 517, 533,
104 S.Ct. 3194, 82 L.Ed.2d 383 (1984) ("For intentional, as for
negligent deprivations of property by state employees, the
state's action is not complete until and unless it provides or
refuses to provide a suitable post deprivation remedy.")).
"Indiana's tort claims act, IND. CODE §34-13-3-1 et seq.,
("ITCA") provides for state judicial review of property losses

19

caused by government employees, and provides an adequate post-deprivation remedy to redress state officials' accidental or intentional deprivation of a person's property." Johnson, 2008 U.S. Dist. LEXIS 9714, *6 (citing Wynn v. Southward, 251 F.3d 588, 593 (7th Cir. 2001) ("Wynn has an adequate post-deprivation remedy in the Indiana Tort Claims Act, and no more process was due."). Because Indiana offers an adequate post-deprivation hearing that satisfies the due process requirements and Golemine was afforded hearings prior to his property deprivation, his due process rights have not been violated. Based on the foregoing, summary judgment is GRANTED in favor of Merrillville on this issue.

Finally, Golemine asserted claims under §1983 for violation of its right to equal protection. Although Golemine alleged facts sufficient to satisfy the pleading standard, at summary judgment, a plaintiff must proffer sufficient evidence that would allow a reasonable jury to infer that it is the policy or custom of Merrillville to discriminate against racial minorities, that discrimination against racial minorities was the motivating factor behind the constitutional deprivations, and that the plaintiff was injured by a policy or custom. Didzerekis, 41 F.Supp.2d at 848 (citing Hynson v. City of Chester, Legal Dep't, 864 F.2d 1026, 1027 (3rd Cir. 1988)).

Golemine has failed to provide evidence for each of these elements. First, Golemine falls short of establishing that Merrillville had a policy to discriminate against African Americans. "[T]he word 'policy' generally implies a course of action consciously chosen from among various alternatives." See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). There must be evidence that the action is widespread, and not a random event. Estate of Sims, 506 F.3d at 515. To show this, "[t]he plaintiff must introduce evidence demonstrating that the unlawful practice was so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision." Phelan, 463 F.3d at 790.

Golemine points to several events in its effort to show that Merrillville had a policy for discriminating against minorities. See Estate of Sims, 506 F.3d at 515 (stating that a policy can be established by showing "a widespread practice that is so permanent and well-settled that it constitutes a custom or practice"). Included among these events was Thorbs' arrest and Merrillville's issuance of nuisance violations to Golemine. However, Golemine has failed to weave these unrelated events together to show that Merrillville had a cognizable policy to discriminate. The fact that Merrillville may have acted outside the law in arresting Thorbs and issuing Golemine nuisance tickets on several occasions

does not show that the practice of discriminating against minorities was permanent and well settled, as the law requires. See Phelan, 463 F.3d at 790 (holding that evidence that multiple employees subjected the plaintiff to gender discrimination falls short of establishing a policy); Estate of Moreland v. Dieter, 395 F.3d 747, 760 (7th Cir. 2005) (holding that evidence that on three occasions prison guards improperly sprayed inmates with pepper spray did not amount to a policy); Palmer v. Marion County, 327 F.3d 588, 595 (7th Cir. 2003) (holding that the jail did not have a policy of placing black inmates in a cell that posed a threat to their safety when the evidence showed that this was only done twice before).

Furthermore, the record is devoid of evidence showing that Merrillville's actions, and the resulting deprivations, were motivated, even in part, by racial discrimination. Golemine refers to several businesses that were owned by non-minorities that the police frequented who did not have their business license revoked. However, this does not show that Merrillville acted against Golemine because its principal was African American. Nor does the record establish that Merrillville has a history of applying the laws unequally to minorities. Absent proof that Merrillville's actions were motivated by discrimination, Golemine cannot succeed on an equal protection claim.

_____

Based on the foregoing, the Motion for Summary Judgment [DE 34] filed by the defendant, Town of Merrillville, Indiana, on September 13, 2010, is GRANTED.

ENTERED this 14th day of February, 2011

                              s/ Andrew P. Rodovich
                                 United States Magistrate Judge